Appellant, Kevin E. Maisel, appeals from a decision of the Franklin County Court of Common Pleas affirming a decision of appellee, Unemployment Compensation Review Commission ("commission"), which affirmed the disallowance of unemployment benefits to appellant.
Appellant was employed by Ohio State University ("OSU") as a painter 1 from August 1, 1985 to September 20, 1996. Appellant's sense of smell is severely limited due to an injury appellant sustained prior to obtaining employment at OSU. Appellant was exposed to harmful fumes in the execution of some of his duties.[1] OSU can provide canister-type respirators to employees who require protection from such fumes; however, those respirators require the user to replace the filter-canisters when the user smells fumes. Appellant's impaired sense of smell rendered him incapable of determining when his respirator canisters required replacement.
Appellant regularly complained to his coworkers, his supervisors, and his union that his inability to smell chemical fumes caused him to suffer headaches, dizziness, or more serious reactions. In 1992 and 1993, two separate physicians recommended that appellant use a respirator that did not depend on canister replacement when working with fume-producing materials. William Schwartz, the human resources director in charge of appellant's section, testified at the administrative hearing that OSU attempted to accommodate appellant in ways that did not involve fitting appellant for a specialized respirator, primarily because appellant did not request one. (Admin. Hearing, Tr. 26-27, 35-36.)
On May 14, 1996, appellant sought treatment for a skin irritation caused by exposure to paint in the course of his employment. The OSU physician who treated appellant also recommended that appellant use a respirator when working with fume-producing materials; however, the physician did not specify a specialized respirator. In response to that recommendation, appellant's supervisors scheduled appellant to be fitted for a canister-type respirator. Appellant did not attend the fitting appointment because he believed, based upon the two earlier physicians' recommendations, that he could not safely use a canister-type respirator.
On June 13, 1996, appellant was directed by his supervisors to cut and install ceiling tiles. Appellant refused to begin the assignment without first contacting environmental safety authorities regarding proper installation of the tiles. The following day, appellant contacted the Occupational Safety and Health Division of the Ohio Bureau of Employment Services ("OBES") and attempted to initiate a good faith refusal to work under dangerous conditions, relating to the cutting and installation of ceiling tiles. OBES personnel informed appellant of the requirements of a valid refusal to work and contacted appellant's supervisor. Acting on appellant's refusal to work complaint, OBES eventually determined that appellant was listed by OSU as having attended two classes concerning the installation of the ceiling tiles in question, and that the cutting of ceiling tiles with a razor knife did not generate enough dust accumulation to require a respirator. (Admin. Record, Aug. 22, 1996 letter from OBES Director, Owen D. Wagner, to appellant.)
On June 14, 1996, after appellant refused to install ceiling tiles for a second time, appellant's supervisors advised him, in the presence of his union representative, that he was being charged with insubordination and/or failure of good behavior for refusing to discuss issues relating to job performance and/or failure to follow specific requests from his supervisors. Appellant was also placed on administrative leave. On July 24, 1996, OSU suspended appellant for seven working days based on charges of neglect of duty, failure of good behavior, and insubordination relating to several events culminating in appellant's refusal to install ceiling tiles on June 13 and 14, 1996. The notification of suspension instructed appellant to return to his regular place of employment on August 7, 1996, and that further infractions of similar nature may subject him to more severe disciplinary action, up to and including dismissal.
Prior to the expiration of the seven-day suspension, appellant requested vacation leave for August 7-9, 1996, due to alleged "unsafe working conditions"; however, the request was denied. In response to appellant's request for vacation leave, OSU informed appellant: "If you choose not to report for work [on August 7, 1996] we will proceed with progressive discipline, as we do with any other employee." (Admin. Record, Aug. 5, 1996 letter from William J. Schwartz to appellant.) Appellant did not report for work on August 7, 1996, as directed. On August 9, 12, 13, 14, 15, and 16, 1996, appellant telephoned his supervisors and other office personnel attempting to obtain sick leave or emergency vacation leave due to alleged "unsafe working conditions." Appellant's supervisors did not approve any of those requests.
On August 19, 1996, OSU notified appellant that he had been absent without approval since August 7, 1996, and that appropriate disciplinary action would be taken. On August 30, 1996, OSU notified appellant that his department had requested disciplinary action against him for neglect of duty and/or insubordination. A pre-disciplinary hearing was conducted on September 5, 1996; appellant did not appear. By certified letter dated September 17, 1996, OSU notified appellant that he was removed for neglect of duty and/or insubordination relating to his prior seven-day suspension and his failure to return to work thereafter.
On September 23, 1996, appellant applied to OBES for unemployment compensation. On October 17, 1996, the administrator of OBES disallowed appellant's first weekly claim, stating that the evidence submitted by appellant failed to establish unsafe working conditions and, therefore, appellant had quit without just cause. Appellant requested reconsideration of the administrator's determination, and the administrator affirmed the decision in a reconsideration decision dated December 20, 1996. Appellant appealed the reconsideration decision to the commission, which conducted an administrative hearing before a hearing officer on January 30, 1997.
The commission modified the administrator's determination that appellant quit, finding that appellant was removed for just cause. The commission also found that the record did not support appellant's contention that he would be subjected to unsafe working conditions after his scheduled return date of August 7, 1998. The commission disallowed appellant's application to institute a further appeal. Appellant appealed the commission's decision to the Franklin County Court of Common Pleas, pursuant to R.C. 4141.28. The court found that the commission's judgment was supported by competent and credible evidence, and was not unlawful, unreasonable, or against the manifest weight of the evidence. Therefore, the court affirmed the commission's decision, in accordance with R.C. 4141.28(O)(1). Appellant now appeals, assigning the following errors:
 "I. The Court of Common Pleas erred in finding that the board of review's conclusions were not unreasonable and not against the manifest weight of the evidence and that it was supported by reliable, substantive, and probative evidence; the evidence presented did not support a conclusion that appellant's actions constituted insubordination.
 "II. The Court of Common Pleas erred in finding that the board of review's decision was not unlawful as the record fails to support the agency's finding that there was 'just cause' for discharge."
Our standard of review in an appeal from the commission is that we may reverse only if the decision is unlawful, unreasonable, or against the manifest weight of the evidence.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995),73 Ohio St.3d 694, 696-697, construing R.C. 4141.28(O)(1). A reviewing court is not permitted to reverse or overturn a decision of the review commission on the basis that reasonable persons might interpret the facts or testimony differently. Id.
at 697.
In the instant case, appellant's assignments of error involve similar issues and will be addressed together. Appellant was denied unemployment compensation benefits under R.C.4141.29(D)(2)(a), which indicates, in pertinent part:
 "[N]o individual may * * * be paid benefits under the following conditions:
"* * *
 "(2) For the duration of the individual's unemployment if the administrator finds that:
 "(a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * *."
Appellant contends in his first assignment of error, that his refusal to work was justified and cannot be categorized as insubordination; therefore, appellant contends the court of common pleas erred in finding the commission's decision to be reasonable and supported by the manifest weight of the evidence. Similarly, appellant argues in his second assignment of error that his refusal to work cannot serve as just cause for his removal; therefore, appellant argues, the common pleas court erred in finding the commission's decision to be lawful under R.C. 4141.29(D)(2)(a).
Both of appellant's assignments of error essentially challenge the commission's just cause determination. "[J]ust cause, in the statutory sense, is that which, to an ordinary intelligent person, is a justifiable reason for doing or not doing a particular act." Tzangas, Plakas Mannos, supra, at 697 (quoting Irvine v. Unemployment Comp. Bd. of Review (1985),19 Ohio St.3d 15, 17). Because the Unemployment Compensation Act was intended to provide financial assistance to persons who are temporarily without employment through no fault or agreement of their own, fault on the behalf of the employee is an essential component of a just cause determination. Id. at 697-698. "If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause." Id. at 698.
In the instant case, the reasonableness of the termination is supported by the evidence that appellant disobeyed his supervisors' instructions to return to work after the seven-day suspension and remained absent without leave for a substantial period of time. Appellant argues that the termination was unreasonable because he believed that he might be required to perform tasks involving dangerous work conditions when he returned to work. R.C. 4167.06, which appellant attempted to invoke in relation to the ceiling tile incident, provides:
 "(A) A public employee acting in good faith has the right to refuse to work under conditions that the public employee reasonably believes present imminent danger of death or serious harm to the public employee, provided that such conditions are not such as normally exist for or reasonably might be expected to occur in the occupation of the public employee.
"* * *
 "(C) A public employee who refuses to perform assigned tasks under division (A) of this section and fails to meet all of the conditions set forth in that division for the refusal is subject to any disciplinary action provided by law or agreement between the public employer and public employee for refusal to work, including, but not limited to, suspension, nonpayment of wages for the duration of the refusal to work, and discharge."
The right to refuse to work under R.C. 4167.06(A) is expressly conditioned upon the reasonableness of the public employee's perception of the potential for imminent serious harm. Appellant did not submit any evidence at the administrative hearing illustrating that OSU planned to place him in a hazardous situation when he returned to work after the seven-day suspension. Rather, the record indicates that appellant requested emergency vacation leave and sick leave due to general "unsafe work conditions," and that, on numerous occasions, appellant hung up the telephone before his supervisor could have ascertained the nature of the purportedly unsafe conditions. (Admin. Record, Aug. 21, 1996 memorandum summarizing appellant's leave requests; Admin. Hearing Tr. 82-83; [testimony of secretary Marry Ellen Kauble].) While the evidence demonstrates that appellant was previously exposed to dangerous fumes due to appellant's sensory impairment, appellant conceded at the administrative hearing that many duties in his department, such as installing glass and grid systems, posed no threat in that regard. (Admin. Hearing Tr. 53-54.) Even the task of installing ceiling tiles, which caused appellant to initiate the refusal to work, was ultimately found to pose an insufficient threat of dust inhalation to warrant a reasonable refusal to work. Moreover, Director of Fiscal and Human Resources Schwartz testified that appellant could not have known what his specific assignments would entail until he returned to work. Id. at 24. For the foregoing reasons, OSU reasonably found appellant to be at fault for failure to return to work as directed.
Given the ample evidence supporting the commission's determination that appellant was terminated for just cause, and the lack of evidence supporting a reasonable refusal to work due to imminent hazardous conditions, we agree with the court of common pleas that the commission's just cause assessment is not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, appellant's first and second assignments of error are overruled.
Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
LAZARUS, P.J., and TYACK, J., concur.
YOUNG, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] Appellant's duties included painting and cleaning painting supplies, as well as removing and replacing ceiling tiles, floor tiles, and broken glass, repairing drywall, installing ceiling grid systems, and performing miscellaneous duties involved in the maintenance of dormitory rooms.